IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY METOYER,

        Petitioner,                    No. CIV S-07-2358 WBS CHS P

    vs.

D.K. SISTO, Warden, et al.,

        Respondents.            FINDINGS AND RECOMMENDATIONS

                            /

I.    INTRODUCTION

        Petitioner Gary Metoyer is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the November 8, 2006, decision by the Board of Parole Hearings (hereinafter Board) finding him unsuitable for parole. Petitioner argues that the Board's determination violated his right to due process. Upon careful consideration of the record and the applicable law, the undersigned will recommend that this petition for habeas corpus relief be denied.

II.    FACTUAL AND PROCEDURAL BACKGROUND

    A.    Facts

        The Board recited the facts of petitioner's commitment offense as follows:

        PRESIDING COMMISSIONER ENG: Okay. So before you took

1

the recess, I was going - - I had stated that I will read into the record the statement of facts and I'm taking it from the probation officer's report, pages 2 and 3, states the following is a background of the offense:

> "Gary Metoyer's two brothers, Bryan Perry and Rodney Perry, were with him and their friend, Tyrone, T-Y-R-O-N-E, Forman, F-O-R-M-A-N, at the Mardi Gras Restaurant. Gary and Rodney left the restaurant and went to a liquor store. In front of the store they saw the victim, Robert Herrera, H-E-R-R-E-R-A, and asked him if he had done dope. He ran and they followed him to his apartment. Arriving there, Alexander Taylor answered the door and said that the victim did not want to come out. Gary and Rodney pushed the door open and Taylor tried to punch them. Then Herrera came out and hit Rodney in the head with a greaser gun. Gary then punched out Alexander and Gary took Rodney to Gary's residence dropping him off. Rodney had a bad cut in the forehead requiring 12 stitches. After this, Gary went back to the Mardi Gras and told the others that he and Rodney had been robbed and that Rodney had been hurt. Gary and Tyrone got into a friend's car and Tyrone told them to go to his place so he could get his gun. They then went to the apartment house and Gary broke the window in the apartment with a baseball bat and Tyrone fired shots into the apartment. There were a number of other people also in the apartment. One of them described the apartment as "a good place to get high" and said that after the shooting, she had grabbed a cocaine pipe and left the residence. Another person who was in the residence told police about cocaine use by the victim, Alexander, herself, and another on the evening of the incident."

Okay. And sir, because you are not going to discuss the crime with us, I will read into the record what we have as the prisoner's version and I'm taking that from the July 7th, 2005 Board reports and states - -

\* \* \*

PRESIDING COMMISSIONER ENG: Absolutely - - absolutely. Okay.

> "Metoyer states he deeply regrets what happened. He does not feel the victim had just cause to hit his brother and bust his brother's head open. However, he was under the influence and exaggerated what had happened. He knows now he did it only because of the abuse of drugs and his extreme intoxication. Metoyer indicated that by no means did he intend for anyone to be shot or for the weapon to

2

> even come out of the car. All he wanted to do was break the window to get the victim in trouble with management. Metoyer agrees that the offense summary retrieved from the probation officer's report to be correct. However, we did not push the door open (only door to the entrance of the building)."

/////

Answer, Exhibit 3 at 80-83.

Petitioner was found guilty of murder in the second degree and on May 3, 1988, sentenced to a prison term of 21 years to life. Answer, Ex. 1 at 90.

On November 8, 2006, the Board held petitioner's Subsequent Parol Consideration Hearing. Answer, Ex. 3 at 63. At the conclusion of that hearing the Board found petitioner unsuitable for parole. Id. at 135.

    B.    Habeas Review

Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court on February 16, 2007. Answer, Ex. 1 at 2. That petition was denied in a reasoned opinion on May 25, 2007. Answer, Ex. 2. Petitioner then filed a petition with the California Court of Appeal on July 17, 2007. Answer, Ex. 3 at 2. That petition was summarily denied on July 24, 2007. Answer, Ex. 4. On July 31, 2007, petitioner petitioned the California Supreme Court. Answer, Ex. 5 at 2. That petition was summarily denied on October 10, 2007. Answer, Ex. 6. Finally petitioner filed this federal petition on November 2, 2007.

/////

III.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas

3

corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

/////

/////

IV.  DISCUSSION OF PETITIONER'S CLAIMS

    A.  Imprisonment Beyond Statutory Maximum

        1)  Description of Claim

Petitioner argues that under California law the Board is required to use the Matrix of Base Terms to calculate and set his maximum term. Petition at 26. Petitioner argues that his maximum term under the Matrix is 16 years and that 16 years is also his maximum term for Apprendi purposes. Id. at 26-27. He argues that by denying his parole the Board has used

4

additional findings of fact, not made by the jury, to extend his sentence beyond his statutory maximum term in violation of Apprendi. Id. at 27-29.

        2)        Applicable Law And Discussion

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U .S. 466, 490 (2000). Apprendi and its progeny however are not applicable to petitioner.

Petitioner was convicted of second degree murder and is currently serving an indeterminate term of life in prison. The statutory maximum for his crime is life imprisonment. Consequently, the Board's determination that petitioner is not suitable for parole did not increase the penalty for his crime beyond the statutory maximum. See generally Oregon v. Ice, --- U.S. - - - - , 2009 WL 77896 (2009) (declining to extend Apprendi to trial court's decision to impose sentences consecutively rather than concurrently, and holding that the Sixth Amendment does not inhibit States from assigning to judges, rather than to juries, the finding of facts necessary to the imposition of consecutive, rather than concurrent, sentences for multiple offenses); United States v. Carranza, 289 F.3d 634, 643 (9th Cir. 2002) (holding that Apprendi is not implicated where the sentence imposed by the district court does not exceed the maximum sentence permitted by statute). Further, the Supreme Court has never held that either the right to a jury trial or the right to a determination of guilt beyond a reasonable doubt applies to parole determinations.

To the extent petitioner is arguing that the Board was required pursuant to California law to set his maximum term, such a claim is not cognizable on federal habeas review. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Smith v. Phillips, 455 U.S. 209, 221 (1982) (federal courts "may intervene only to

correct wrongs of constitutional dimension"); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) ("We accept a state court's interpretation of state law, ... and alleged errors in the application of state law are not cognizable in federal habeas corpus."), cert. denied, 522 U.S. 881 (1997). However, even if petitioner's claim had raised a federal question, it would lack merit.

Under California law, the Board is not required to set a base term until after it finds a prisoner suitable for parole. In In re Dannenberg, 34 Cal.4th 1061 (2005), the California Supreme Court made it clear that the obligation to calculate an inmate's base term only arises after the Board has found the inmate suitable for parole. Dannenberg, 34 Cal.4th at 1078-1080. Further, the California Supreme Court explicitly held that the Board is not required to "compare the inmate's actual period of confinement with others serving life terms for similar crimes," or to refer to its matrices, in making a determination of parole suitability. Dannenberg, 34 Cal.4th at 1083. Federal courts are bound by the state courts' interpretation and application of state law. See Hicks v. Feiock, 485 U.S. 624, 629-30 & n. 3 (1988); see also Wainwright v. Goode, 464 U.S. 78, 84 (1983); Williams v. Calderon, 52 F.3d 1465, 1480-1481 (9th Cir. 1995), cert. denied, 516 U.S. 1124 (1996).

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law and petitioner is not entitled to relief on this claim.

/////

B.   Due Process

  1)   Description of Claim

In finding petitioner unsuitable for parole the Board relied upon: a) the circumstances of the commitment offense, and b) petitioner's previous record of violence. Answer, Ex. 3 at 135-36.

Petitioner argues that the Board's finding of unsuitability was not supported by "any relevant, reliable evidence in the record" that he currently posed an unreasonable risk of

6

danger to society and that the Board's decision was therefore a violation of due process. Petition at 31.

    2)  <u>Applicable Law</u>

    The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).

    A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz v. Inmates of Nebraska Penal</u>, 442 U.S. 1, 12 (1979)). In this regard, it is clearly established that California's parole scheme provides prisoners sentenced in California to a state prison term that provides for the possibility of parole with "a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." <u>Irons v. Carey</u>, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing <u>Sass v. Cal. Bd. of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006); <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th Cir. 2003); <u>McQuillion</u>, 306 F.3d at 903; and <u>Allen</u>, 482 U.S. at 377-78 (quoting <u>Greenholtz</u>, 442 U.S. at 12)). Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case violated due process.

7

It has been clearly established by the United States Supreme Court "that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

"The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the fact-finder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the [ ] decision must have some indicia of reliability." Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). See also Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992). Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

        3)     Discussion

            a)     Circumstances of The Commitment Offense

With respect to the circumstances of the commitment offense the Board stated:

> . . . regarding the commitment offense, the offense was carried out in [an] especially cruel and/or callous manner. Multiple victims were attacked, injured and/or killed in the same or separate incidents. The offense was carried out in a dispassionate and/or calculated manner such as an execution-style murder. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and the motive of the crime was inexplicable or very trivial in relation to the offense and it appears to be . . . revenge.

Answer, Ex. 3 at 135.

/////

The Los Angeles County Superior Court found some evidence to support the Board's conclusion that "multiple victims were attacked, injured or killed." Answer, Ex. 2 at 3.

The circumstances of the commitment offense are one of fifteen factors relating to an inmate's unsuitability or suitability for parole under California law. Cal. Code. Regs., tit. 15 § 2402(c)(1)-(d). When denial is based on these circumstances the California courts have stated that:

> A prisoner's commitment offense may constitute a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole, but the denial of parole may be predicated on a prisoner's commitment offense only where the Board can "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. [In re] Dannenberg, 34 Cal.4th [1061] at 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005). Factors beyond the minimum elements of the crime include, inter alia, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code. Regs., tit. 15 § 2402(c)(1)(B), (D)-(E)."

/////

Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support denial of parole, the "factors beyond the minimum elements of the crime" "must be predicated on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety.")

Such circumstances may include "rehearsing the murder, executing of a sleeping victim, stalking," id., or evidence that the defendant "acted with cold, calculated, dispassion, or that he tormented, terrorized or injured [the victim] before deciding to shoot her; or that he gratuitously increased or unnecessarily prolonged her pain and suffering." In re Smith, 114 Cal.App.4th at 367.

/////

9

The relevant inquiry however "is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are <u>probative</u> to the central issue of <u>current</u> dangerousness when considered in light of the full record before the Board or the Governor." <u>In re Lawrence</u>, 44 Cal.4th 1181, 1221 (Cal. 2008); <u>In re Dannenberg</u>, 34 Cal. 4th at 1070-71.

Petitioner and his brother chased the victim from a store to the victim's home, apparently to steal drugs. Answer, Ex. 3 at 80. Petitioner and his brother then attempted to force their way into the victim's residence. <u>Id.</u> After being repelled by force, petitioner used the lie that he and his brother had been robbed by the victim to enlist the aid of his crime partner. <u>Id</u>. at 81. Petitioner then drove with his crime partner to obtain a shotgun before traveling back to the victim's residence, where petitioner smashed a window with a bat and implored his crime partner to "shoot - - shoot." <u>Id.</u> at 81, 127.

At the time of the shooting "a number of other people" were in the apartment and thus "multiple victims were attacked." Further, the motive for the murder was very trivial. Because all murder is trivial to some degree, for purposes of comparison and to fit the statutory definition, the motive must be materially less significant (or more "trivial") than those which typically drive people to commit murder and therefore is more indicative of a risk of danger to society if the prisoner is released than is ordinarily presented. <u>In re Scott</u>, 119 Cal.App.4th 871, 891 (2004). Petitioner's motive appears to have been anger or embarrassment over his failure to enter the victim's residence so that he could rob the victim, even though the victim was merely defending himself and his dwelling. While petitioner's crime might be somewhat more understandable had all of the event occurred nearly simultaneously, instead petitioner had the time it took to travel back to the restaurant, obtain the shotgun, and travel back to the victim's residence to cool down and contemplate his actions.

The Board's conclusion regarding the circumstances of the commitment offense is supported by some evidence. More importantly, the identified facts were probative to the

1  central issue of petitioner's then current dangerousness when considered in light of the full
2  record before the Board. That record included petitioner's previous record of violence.
3  /////

          b)        <u>Previous Record of Violence</u>

The Board stated that petitioner had "on previous occasions inflicted or attempted to inflict serious injury on a victim, [had] a record of violence or assaultive behavior, an escalating pattern of criminal conduct and/or violence . . ." Answer, Ex. 3 at 136. The Los Angeles County Superior Court found some evidence to support that conclusion. Answer, Ex. 2 at 3.

Under California law, a previous record of violence is one factor that can indicate unsuitability. Cal. Code Regs., tit. 15 §2402 (c)(2). A previous record of violence is found where "[t]he prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." <u>Id.</u> The Board is also authorized to consider "any other information which bears on the prisoner's suitability for release." Cal. Code. Regs., tit. 15 § 2402(b).

During the hearing it was noted that approximately ten years before the commitment offense petitioner had been convicted of another second degree murder and was sentenced to prison. Answer, Ex. 3 at 84-85. Petitioner refused to discussed that conviction. <u>Id.</u> at 87.

A prior conviction for murder is evidence of a previous record of violence. The Board's conclusion regarding petitioner's previous record of violence therefore is supported by evidence.

          4)        <u>Conclusion</u>

The facts of petitioner's commitment offense were probative to his current dangerousness when considered in light of the full record before the Board. That record included petitioner's previous record of violence, specifically a previous conviction for murder.

1  Petitioner argues that the Board relied solely on unchanging factors while ignoring the factors
2  supporting his suitability.  Petition at 41-46.

3  　　　　While it is true that the continued reliance over time on unchanging factors such
4  as the circumstances of the commitment offense may result in a due process violation, a parole
5  denial based solely on unchanging factors can initially satisfy due process requirements.  Biggs,
6  334 F.3d at 916.  In Irons, the Ninth Circuit explained that Biggs represents the law of the circuit
7  that continued reliance on a prisoner's commitment offense or conduct prior to imprisonment
8  could result in a due process violation over time.  Irons, 505 F.3d at 853.  Nevertheless, the court
9  held that, given the egregiousness of the commitment offense, due process was not violated
10 when the Board deemed a prisoner unsuitable for parole prior to expiration of his minimum term.
11  Id. at 846.

12 　　　　Petitioner was found guilty on May 3, 1988, and sentenced to 21 years to life.
13 Answer, Ex. 1 at 90.  He thus had not served his 21 year minimum term for his commitment
14 offense at the time of the 2006 hearing.  That commitment offense was a senseless murder
15 committed just ten years after being convicted and incarcerated for a previous murder.  Given the
16 egregiousness of his commitment offense, and his prior conviction for murder, due process was
17 not violated when the Board deemed petitioner unsuitable for parole prior to the expiration of his
18 minimum term based on the circumstances of the commitment offense and his previous record of
19 violence.

20 　　　　Based on this record there was some evidence to support the Board's conclusion
21 that at the time of the hearing petitioner was unsuitable for parole.  The state court's rejection of
22 this claim was neither contrary to, nor an unreasonable application of, clearly established federal
23 law and petitioner is not entitled to relief on this claim.
24 /////
25 /////
26 /////

1   Accordingly, IT IS RECOMMENDED that petitioner's petition for a writ of
2 habeas corpus be denied.
3   These findings and recommendations are submitted to the United States District
4 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
5 days after being served with these findings and recommendations, any party may file written
6 objections with the court and serve a copy on all parties.  Such a document should be captioned
7 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
8 shall be served and filed within ten days after service of the objections.  The parties are advised
9 that failure to file objections within the specified time may waive the right to appeal the District
10 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11 DATED: August 25, 2009

           /s/ Charlene H. Sorrentino
           CHARLENE H. SORRENTINO
           UNITED STATES MAGISTRATE JUDGE